1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEPHANIE ROBERTS,

          Plaintiff(s),

v.

SMITH'S FOOD & DRUG CENTERS, INC., et al.,

          Defendant(s).

2:11-CV-1917 JCM (GWF)

**ORDER**

Presently before the court is plaintiff Stephanie Roberts' motion to reconsider. (Doc. # 75). Defendant has not filed a response to this motion.

**I.    Background**

In the instant motion, plaintiff argues that Magistrate Judge Foley erred in denying her motion for discovery sanctions. (Doc. # 74). In the underlying motion, plaintiff argued that sanctions against defendant were warranted due to (1) defendant's failure to produce surveillance video of the alleged collision between plaintiff and defendant's employee and (2) letters written by defendant's counsel that were sent directly to Dr. Moris Senegor, plaintiff's treating physician.

The magistrate judge denied plaintiff's motion, finding that (1) there is no evidence on the record showing that a surveillance video of the accident ever existed and (2) plaintiff suffered no prejudice as a result of defendant's counsel's *ex parte* communication with Dr. Senegor.

. . .

**James C. Mahan**
**U.S. District Judge**

## II.     Legal standard

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); D. Nev. R. 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."). "This subsection would also enable the court to delegate some of the more administrative functions to a magistrate, such as . . . assistance in the preparation of plans to achieve prompt disposition of cases in the court." *Gomez v. United States*, 490 U.S. 858, 869 (1989).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ressam*, 593 F.3d 1095, 1118 (9th Cir. 2010) (quotation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, 2012 WL 3884939, at *3 (D. Nev. 2012).

A magistrate's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to de novo review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## III.     Analysis

In the instant motion, plaintiff reiterates the same arguments that were rejected by the magistrate judge. Plaintiff asserts that a statement made by a manager at Smith's speculating that the incident had been recorded demonstrates that defendant has failed to preserve relevant evidence. Additionally, plaintiff argues that defendant's counsel's letter to Dr. Senegor was prejudicial because Dr. Senegor later testified that the subject incident did not cause plaintiff's injuries. The court will address each of these contentions in turn.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

1

*(1) Failure to Preserve Surveillance Footage*

2

Immediately following the accident, Claudia Bonner, a manager at Smith's, prepared a

3

customer incident report detailing the events surrounding plaintiff's fall. The customer incident

4

report form included the question: "Is there Video Evidence?" next to which Bonner circled "Y."

5

(Doc. # 66-3). After this suit was filed, plaintiff sent a letter requesting that defendant preserve any

6

video recordings of the accident. Later, in a response to an interrogatory, defendant stated that no

7

pictures, photographs, videos, or visual depictions of the accident existed. Defendant subsequently

8

submitted an affidavit stating "there were no surveillance cameras trained on the aisle or area where

9

plaintiff was bumped." (Doc. # 68-9).

10

Plaintiff now points to her own deposition testimony, in which she recounted that Bonner had

11

said "the whole incident's on tape" while Bonner was filling out the incident report. Even taking

12

plaintiff's self-serving testimony as true, the court does not find that the magistrate judge committed

13

clear error in ruling that defendant did not fail to preserve evidence. Plaintiff does not assert that

14

Bonner had viewed the surveillance footage at the time she filled out the incident report, and

15

therefore Bonner's oral statements at the time of the accident as well as the report itself amount to

16

mere speculation as to the contents of the video recordings.

17

Additionally, plaintiff has not pursued additional discovery as to the normal angles and

18

ranges of defendant's cameras, which may have revealed whether the incident should have been

19

recorded.

20

Therefore, because there is no evidence on the record indicating that video footage of the

21

incident ever existed, and plaintiff failed to pursue discovery to show that the incident would have

22

been recorded under defendant's normal recording practices, the court finds that the magistrate judge

23

did not commit clear error in denying this portion of plaintiff's motion for sanctions.

24

*(2) Ex Parte Communication with Dr. Senegor*

25

On May 9, 2013, Dr. Senegor sent a letter to defendant requesting authorization to perform

26

surgery upon plaintiff's lower back. In response, defendant's counsel sent a letter to Dr. Senegor

27

stating,

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> As you are probably aware, there is current litigation pending between Stephanie Roberts and Smith's. Therein, Ms. Roberts is claiming that her "current" low back problems are causally related to the accident at Smith's. Smith's vehemently disagrees. Further, your letter dated April 8, 2013 incorrectly indicates that "although [Ms. Roberts] had some residual back symptoms. The new problem began in 2009 when she fell at a grocery store." In fact, Smith's has retained a medical expert that has concluded that the (sic) "The accident caused some minor discomfort that resolved quickly. It did not aggravate her underlying condition."
>
> Based upon Ms. Robert's own medical records and the opinions from the medical expert, Smith's will not agree to pay any portion of the proposed future surgery. Further, given the fact that Plaintiff's own primary care doctors previously refused to clear her for surgery, we do not feel that any minimal benefit from this extreme surgery is worth the risk of performing the same. As such, Smith's strongly urges that the surgery not take place and will not be responsible for the expense or any unfortunately (sic) consequences of the same.

(Doc. # 68-2).

After Dr. Senegor continued to request payment from defendant following plaintiff's surgery, defendant's counsel responded with a letter stating,

> The pending litigation arises out of an accident in which Ms. Roberts was bumped at a SMITH'S grocery store and fell cutting her hand on a broken bottle. First aid treatment was rendered to Ms. Roberts and she left the store under her own power.
>
> Prior to the accident at SMITH'S, Ms. Roberts had a fusion of her L4-5 vertebrae in 2004. After the surgery, she continued to complain of and treat for problems with her low back. After the accident at SMITH'S, Ms. Roberts symptomatology did not significantly change. Accordingly, the medical expert retained by SMITH'S and SEDGWICK performed an Independent Medical Examination and records review and concluded that the accident at SMITH'S resulted in a **minor** aggravation of Ms. Roberts pre-existing low back condition. Further, said expert has concluded that the surgery performed in Stockton, California was **not causally related** to the accident at SMITH'S, but rather is the result of adjacent segment breakdown experienced after the original fusion surgery in 2004.
>
> Based upon the opinions of the medical expert, SMITH'S has made it amply clear that they will not be responsible for or pay for **any medical treatment after 2009**. As such, you were misinformed when you were told that SMITH'S and/or SEDGWICK should be billed for your recent treatment. Accordingly, by means of this letter, I demand on behalf of SMITH'S and SEDGWICK that you stop from sending bills to them as they are not responsible for and will not pay for any

James C. Mahan
U.S. District Judge

- 4 -

of the medical treatment recently performed by you. Further, I notice
that Ms. Roberts is a Medicare beneficiary and I strongly urge you to
submit all of your billing statements to Medicare for reimbursement.

(Doc. # 66-2).

During his deposition on December 19, 2013, Dr. Senegor testified that the physical defects
in plaintiff's lumbar spine were not caused by the incident in this case.

Plaintiff contends that the letters sent by defendant violated physician-patient privilege under
Nevada state law. Section 49.225 of the Nevada Revised Statutes provides, "A patient has a privilege
to refuse to disclose and to prevent any other person from disclosing confidential communications
among himself, his doctor or persons who are participating in the diagnosis or treatment under the
direction of the doctor, including members of the patient's family." Section 49.246(2) clarifies "a
communication is 'confidential' if it is not intended to be disclosed to any third person . . . ."

The letters sent by defendant's counsel did not solicit confidential information from Dr.
Senegor. Indeed, these letters merely explain why defendant refused to pay for plaintiff's surgery. The
letters did not request any kind of a response from Dr. Senegor or even imply that defendant sought
any information regarding plaintiff's condition. Therefore, the court finds that the magistrate judge
did not err in holding that the physician-patient privilege was not violated by these *ex parte*
communications.

Additionally, the court finds that the magistrate judge did not commit clear error in holding
that plaintiff has suffered no prejudice as a result of these letters. Though Dr. Senegor's deposition
testimony may undermine plaintiff's theory of causation, his conclusions were drawn, not from
defendant's letters, but from his treatment of plaintiff and his independent knowledge of plaintiff's
medical history.

Accordingly, the court finds that Magistrate Judge Foley's decision to deny plaintiff's motion
for discovery sanctions was not in error.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 5 -

IV.    **Conclusion**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for reconsideration, (doc. # 75), be, and the same hereby is, DENIED.

DATED May 30, 2014.

_____
**UNITED STATES DISTRICT JUDGE**